Filed 2/25/16  Tolsa v. Pacific Aqua Farms CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| MIGUEL TOLOSA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PACIFIC AQUA FARMS et al.,<br><br>    Defendants and Respondents. | B255255<br><br>(Los Angeles County<br>Super. Ct. No. BC481759) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

Alireza Alivandivafa for Plaintiff and Appellant.

LA SuperLawyers and William W. Bloch for Defendants and Respondents.

\*\*\*\*\*\*

Plaintiff Miguel Tolosa appeals the judgment following the trial court's grant of summary judgment to defendants Pacific Aqua Farms (PAF) and David Palmer on plaintiff's claims for defamation, intentional interference with prospective economic advantage, and unfair competition (Bus. & Prof. Code, § 17200, et seq.). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

For 21 months, plaintiff worked as a sales representative for PAF, a Los Angeles-based importer and wholesale distributor of coral, fish, and invertebrates from the South Pacific, including Bali and the Solomon Islands. In his position, he contacted existing clients about their reordering needs, attempted to sell them additional products, obtained referrals, and prospected for new clients for PAF's aquarium products. Each month, PAF ranked its three full-time sales staff and three other employees who performed sales based on the total dollars of sales invoiced. According to PAF's sales records, when measured by the average amount of commission earned per hour worked, plaintiff was ranked in the bottom two sales people for 20 of the 21 months of his employment. For one month, he rose up to the bottom three, which Palmer believed was due to one of PAF's other sales people being on vacation for part of that month.

Plaintiff left PAF in April 2011 for a position with Oculus Aquatics. On his last day, he sent a mass e-mail to a list of undisclosed recipients announcing his departure and making negative comments about PAF and its sales people. Among his comments, he solicited orders for his new employer, claiming that "it's been about 6 months since we've gotten a decent shipment here [at PAF] and over a year since we had relatively consistent quality, and honestly I'm tired of telling everyone they have to wait months for good corals." He referred customers looking for fish to another individual at PAF, whom he described as a "reincarnated used car salesman," but if "you are direct with him to not push the salesman thing then you'll have a great experience. He's the only other trustworthy person here as far as fish go and will look out for your best interests. The quality of [this person's] fish picks will be the same as mine, corals not so much though." As for corals, plaintiff directed the recipients not to

2

order from PAF: "I barely make enough to pay my rent because I'd rather tell you guys there was nothing good here than to send you garbage; no one else here shares that mentality. If you order corals from here they will be crap and you will lose money on them, guaranteed. You'll have reps (including [the one mentioned above]) telling you otherwise, please take my word on it, I can't tell you how many customers we lose on a monthly basis due to poor quality." He went on to disparage PAF's sales staff, claiming they did not have customers' best interests in mind and would "lie[,] cheat and steal to get an order from you."

Believing this e-mail posed a threat to PAF's business, Palmer sent an e-mail on the same day to PAF customers whom he believed likely received plaintiff's e-mail. In the course of responding to plaintiff's statements, Palmer claimed "Miguel was never able to lift himself out of the bottom two ranking as a salesman." He also wrote, "All of us here at [PAF] feel a bit hurt by the negative comments that Miguel had to say but we truly do hope that he can overcome his personal problems and return to a positive mindset."

After Palmer sent this e-mail, plaintiff's job offer with Oculus was revoked, which plaintiff claims was the result of the statements Palmer made in the e-mail. Plaintiff also claims he has been unable to find other work in the same industry as a result of Palmer's e-mail.

Plaintiff filed a complaint against defendants alleging claims for defamation, tortious interference with prospective economic advantage, and unfair competition pursuant to Business and Professions Code section 17200, the latter two of which were derivative of the defamation claim.[1] Defendants moved for summary judgment, or alternatively, summary adjudication, identifying 15 different discrete issues. Plaintiff opposed on the merits and requested a continuance to conduct additional discovery pursuant to Code of Civil Procedure section 437c, subdivision (h). In reply, defendants raised evidentiary objections and addressed the issue of "substantial truth"

---

[1]     The complaint itself was not included in the record on appeal.

arguably for the first time, so the trial court continued the summary judgment hearing and granted plaintiff leave to file a sur-reply, which plaintiff did.

The court sustained some of defendants' objections and granted summary adjudication on seven issues, including that Palmer's statement that plaintiff was "never able to lift himself out of the bottom two ranking as a salesman" was substantially true and Palmer's statement about plaintiff's "personal problems" was nonactionable opinion. The court's rulings completely disposed of plaintiff's defamation, intentional interference, unfair competition, and punitive damages claims against both defendants. As a result, the court granted summary judgment.[2] It denied plaintiff's request for a continuance to conduct further discovery pursuant to Code of Civil Procedure section 437c, subdivision (h). Plaintiff timely appealed.

## DISCUSSION

### 1. Legal Standards

We review the grant of summary judgment de novo, considering all the evidence set forth in the moving and opposition papers except evidence for which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment must be granted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, we must decide whether the defendant has conclusively negated a necessary element of the plaintiff's claim or has established an affirmative defense and has demonstrated no material issue of fact requires a determination at trial. (Code Civ. Proc., § 437c, subd. (*o*); *Guz, supra*, at p. 334.)

---

[2] The court denied summary adjudication on the remaining discrete issues, either finding disputed issues of fact or finding them mooted by the other rulings. There is no dispute, however, that the court's rulings fully disposed of plaintiff's case.

4

*2. Analysis*

Our task in this appeal is narrow because plaintiff has limited his arguments regarding his defamation claim to only one statement: Palmer's claim in his email that plaintiff "was never able to lift himself out of the bottom two ranking as a salesman." (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiffs' brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned."].)[3] Plaintiff also concedes his intentional interference, unfair competition, and punitive damages claims are wholly derivative of his defamation claim, so we need not analyze them separately. Plaintiff raises additional procedural arguments we address below. For their part, defendants raise other issues, but we need not address them because the issue of substantial truth is dispositive.

*A. Substantial Truth*

"'Defamation is effected by either of the following: [¶] (a) Libel. [¶] (b) Slander.' (Civ. Code, § 44.) To constitute libel or slander, the published statement must be false. (Civ. Code, §§ 45, 46.) To establish the defense of truth—i.e., that the statement is not false—defendants do not have to prove the 'literal truth' of the statement at issue. [Citation.] '[S]o long as the imputation is substantially true as to justify the "gist" or "sting" of the remark' the truth defense is established." (*Hughes v. Hughes* (2004) 122 Cal.App.4th 931, 936, fn. omitted.) "'. . . California law permits the defense of substantial truth and would absolve a defendant even if [he or] she cannot "justify every word of the alleged defamatory matter; it is sufficient if the

---

[3] In passing in his opening brief, plaintiff also suggests that Palmer's statement in his e-mail that plaintiff "did not understand" a "basic part of this business" is a statement of fact to be tried before a jury. Plaintiff did not raise this argument in the trial court, so we will not address it. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 (*San Diego Watercrafts*) ["Appellate courts need not address theories that were not advanced in the trial court."].)

5

substance of the charge be proved true, irrespective of slight inaccuracy in the details."
[Citations.] . . . Minor inaccuracies do not amount to falsity so long as "the substance,
the gist, the sting, of the libelous charge be justified." [Citations.] Put another way,
the statement is not considered false unless it "would have a different effect on the
mind of the reader from that which the pleaded truth would have produced.""" (*Ibid.*,
quoting *Masson v. New Yorker Magazine, Inc.* (1991) 501 U.S. 496, 516-517; see
*Heuer v. Kee* (1936) 15 Cal.App.2d 710, 714 (*Heuer*).)

The trial court found the statement that plaintiff "was never able to lift himself
out of the bottom two ranking as a salesman" was substantially true because "[t]he
Sales Records indicate that this is a true statement for 20 of those 21 months [plaintiff
was employed with PAF], but that for the 21st month (January 2010) Plaintiff rose to
the 3rd ranking. Thus, the substance or gist of Defendant Palmer's statement was
accurate. More to the point, it is clear that the 'sting' of Defendant Palmer's comment
would remain unchanged if Defendant Palmer had been more accurate and written, for
example, '[Plaintiff] was almost never able to lift himself out of the bottom two
ranking as a salesman' or 'out of his 21 months with PAF, [Plaintiff] was able to lift
himself out of the bottom two ranking as a salesman exactly once.'"

We fully agree with this analysis. The "gist" or "sting" of Palmer's statement
was that plaintiff performed poorly as a sales person, which was not changed by the
fact that plaintiff was able to lift himself into the bottom three sales people for one
month. In fact, this case presents an even more compelling circumstance for granting
summary judgment on substantial truth than other cases finding allegedly defamatory
statements substantially true. For example, in *Campanelli v. Regents of University of
California* (1996) 44 Cal.App.4th 572 (*Campanelli*), the plaintiff was fired as the head
basketball coach at the University of California, Berkeley after the school's athletic
director overheard him severely criticizing players in the locker room. (*Id.* at p. 576.)
Later, in an interview with the New York Times, the athletic director said of the
plaintiff's actions, """The players were beaten down and in trouble psychologically."""
(*Ibid.*, italics omitted.) The plaintiff asserted a defamation claim based on that

6

statement, and the court affirmed the sustaining of the defendant's demurrer, concluding the statement was substantially true based on the plaintiff's own factual submissions that he "engaged in temper tantrums directed at his players which included verbally abusive and profane remarks of a personal nature, to the extent that seven members of the team wanted to transfer unless he was fired. Through these concessions, [the plaintiff] has admitted the essential accuracy of [the athletic director's] statement that the players were 'in trouble psychologically.'" (*Id.* at p. 582.)

Similarly, in *Swaffield v. Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147 (*Swaffield*), a defendant wrote a "rambling informal 17-page" letter asserting a wide range of "fact, assumption, opinion, conclusion and commentary" about the plaintiff's fraudulent and other activities related to the company for which he was president. (*Id.* at pp. 160-161.) After the defendant sent the letter, the plaintiff was convicted of securities fraud. (*Id.* at p. 156.) The court affirmed summary judgment on the plaintiff's defamation claim because the plaintiff's conviction showed the *substance* of the defendant's assertions of "fraud and falsification of records" in the letter were true. (*Id.* at p. 164.)

If the statements in *Campanelli* and *Swaffield* were substantially true, then there can be no dispute Palmer's statement here was substantially true. The minor inaccuracy that plaintiff performed better in one month as compared to the other sales people in no way removed the "gist" or "sting" of the clear implication of Palmer's comment that plaintiff did not perform well as a sales person. It is no different than finding substantially true the statement in *Campanelli* that the players were ""'in trouble psychologically"'" (*Campanelli, supra*, 44 Cal.App.4th at p. 576) because the plaintiff admitted he verbally abused them, or finding substantially true the many statements in the rambling 17-page letter in *Swaffield* because the plaintiff was later convicted of securities fraud.

To avoid this conclusion, plaintiff repeatedly emphasizes that Palmer admitted in his deposition that his statement was false. That is an accurate—if hyperbolic—

7

representation of Palmer's deposition testimony, given he repeatedly stated his belief that plaintiff was ranked in the bottom three during one month because one of the sales people had been on vacation for part of that month. But Palmer's admission makes no difference in applying the substantial truth doctrine in this case. The whole point of allowing substantial truth to defeat a defamation claim is to permit slight inaccuracies in a statement, so long as the "gist or sting" of the statement remains true. Indeed, defendants' substantial truth argument would be *less* persuasive if Palmer had denied his statement was in any way untrue in the face of PAF's own sales records showing for one month plaintiff was ranked in the bottom three instead of the bottom two sales people.

Plaintiff also suggests at various points in his briefs that another sales person named Jim Kono should have been included in PAF's sales rankings. But plaintiff has offered no evidence that including Kono would have changed plaintiff's sales ranking or that PAF deliberately excluded Kono from its ranking system in order to justify Palmer's statement. To the contrary, Palmer testified at his deposition that Kono was not a regular employee of PAF; instead, he was "an old friend from the fish business, and I gave Jim a desk at [PAF] so that he could spend his days there. Jim lived with his mother who was pressuring him to get out and get a job." He was not on PAF's payroll and Palmer paid him a cash commission for any sales.

Plaintiff presents a host of other arguments, none of which is persuasive. He claims the "vast majority" of substantial truth cases involve public figures, citing only *Campanelli*, but cases make no such distinction and have applied the substantial truth doctrine without regard to public figure status. (See, e.g., *Swaffield, supra*, 271 Cal.App.2d at p. 160 [corporate executive]; *Heuer, supra*, 15 Cal.App.2d at p. 711 [school teacher].) Second, he claims the substantial truth cases focus on whether the "substance" of the statement is true, and here the substance of Palmer's statement was false. (See *Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1180-1181 ["Significantly, however, the defendant need not justify the literal truth of *every word* of the allegedly defamatory matter. It is sufficient if the *substance*

8

of the charge is proven true, irrespective of slight inaccuracy in the details, 'so long as the imputation is substantially true so as to justify the "gist or sting" of the remark.'"].) He is wrong:  the "substance" of Palmer's statement was that plaintiff performed poorly as a sales person.  That was true irrespective of the slight inaccuracy that, for one month, he lifted himself out of the bottom two ranking into the bottom three. Finally, plaintiff cites *Gantry Constr. Co. v. American Pipe & Constr. Co.* (1975) 49 Cal.App.3d 186 to argue the jury must decide whether the "gist or sting" of the statement is true.  But *Gantry* involved the propriety of jury instructions on defamation and truth, not summary judgment, and other courts have affirmed summary judgment on the issue of substantial truth.  (See, e.g., *Swaffield, supra*, at p. 164.)  Thus, the trial court properly granted summary adjudication on the issue of substantial truth, disposing of plaintiff's defamation, intentional interference, unfair competition, and punitive damages claims.

*B.  New Argument in Reply Brief*

Plaintiff contends the trial court improperly considered the issue of substantial truth because defendants raised it for the first time in their reply brief in support of their summary judgment motion.  Although he is correct defendants *focused* on substantial truth in their reply brief, they cited the relevant law in their motion (including *Campanelli*) and claimed in their motion and in their separate statement that Palmer's statement about plaintiff's sales ranking was true.  But even if the issue of substantial truth was newly raised in defendants' reply brief, the trial court did not abuse its discretion in considering it.  In summary judgment proceedings, the court has discretion to "consider all admissible evidence of which the opposing party has had notice and the opportunity to respond," including evidence submitted with a reply brief.  (*Weiss v. Chevron, U.S.A., Inc.* (1988) 204 Cal.App.3d 1094, 1098-1099; see *San Diego Watercrafts, supra*, 102 Cal.App.4th at p. 316.)  Here, the trial court continued the summary judgment hearing to give plaintiff the opportunity to file a sur-reply to address the issue of substantial truth, which plaintiff did.  Plaintiff was also given the opportunity to orally argue the issue twice.  Because plaintiff was given a

9

full and fair opportunity to rebut defendants' substantial truth argument, the court did not abuse its discretion in considering it.

## C. *Continuance*

In his opposition brief in the trial court, plaintiff requested a continuance pursuant to Code of Civil Procedure section 437c, subdivision (h), but he provided no affidavits to support the request and identified no facts he would likely discover. At the hearing on the summary judgment motion, plaintiff suggested he would find and depose Kono in order to challenge PAF's sales ranking system. Defendants pointed out the issue of the ranking system was always at issue in the case and plaintiff did not previously locate and depose Kono, has not identified what favorable testimony Kono would give, and any testimony from him on the ranking system would be inadmissible. The trial court denied plaintiff's request because he "submitted no affidavits in support of his request for a continuance and makes no showing as to what essential facts that might be obtained if a continuance is granted, let alone give any reason to believe any such facts may exist or why additional time is necessary to obtain them."

Code of Civil Procedure section 437c, subdivision (h) provides, "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." In order to obtain a continuance, the requesting party must show "'(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. [Citations.]' [Citation.] The decision whether to grant such a continuance is within the discretion of the trial court." (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633.)

10

In both the trial court and again on appeal, plaintiff has failed to meet any of these requirements. As we already explained, plaintiff has offered no evidence to suggest testimony from Kono about his sales with PAF would defeat summary judgment. Even if Kono could provide favorable testimony, plaintiff has not given any reasons to believe he *would* do so at a deposition. And plaintiff has yet to explain why he did not seek out Kono's testimony long before the summary judgment proceedings. We find no abuse of discretion.

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.


FLIER, J.


WE CONCUR:



RUBIN, ACTING P. J.



GRIMES, J.


11