[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10868
Non-Argument Calendar
_____

D.C. Docket No. 0:12-cv-61356-RNS

ABDELAZIZ BILAL HAMZE,

Plaintiff-Appellant,

versus

LT. CUMMINGS,
DEPUTY JAMES ANDERSON,
DEPUTY CHARLES JONES,
DEPUTY BRUCE CARSON,
AL LAMBERTI,
Head of BSO, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 20, 2016)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Abdelaziz Bilal Hamze, a Florida state inmate, appeals *pro se* the district court's order dismissing his 42 U.S.C. § 1983 claims on the grounds that they are barred in part by the statute of limitations and in part by collateral estoppel. After careful consideration, we affirm.

## I.  BACKGROUND

Hamze was arrested on June 4, 2007 for the death of a black woman who was dragged underneath his vehicle for two miles after a hit and run.[1] Immediately after Hamze's arrest in June 2007, defendant Kenne Jenne, who was then the head of the Broward Sheriff's Office, spoke to the media. His statements included the following: "This was a brutal, senseless, roadrage killing. Hamze's complete disregard for human life should outrage everyone in this community. His capture will ensure he will pay for his brutality." Compl., Doc. 1 at 4-5 (internal quotation marks omitted).[2] Jenne also indicated that he intended to charge Hamze with first degree murder. Jenne attempted to charge him with first degree murder, but the grand jury downgraded the charge to second degree murder. Hamze was also

---

[1] Unless otherwise indicated, we derive this factual background from the allegations in Hamze's complaint, which we accept as true for purposes of the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Citations to "Doc." refer to docket entries in the district court record in this case.

2

charged with vehicular homicide and two counts of leaving the scene of an accident.

During his pretrial detention at Broward Main Jail ("Main Jail"), from June 7, 2007 through September 17, 2008, Hamze suffered injuries on several occasions. On August 17, 2007, deputies placed him in a holding cell with general population inmates, despite knowing that Hamze belonged in protective custody. As a result, Hamze was beaten by a fellow inmate who accused Hamze of committing a "heinous [crime] against black people." *Id.* at 5. Then on January 9 and 10, 2008, Main Jail deputies themselves seriously injured Hamze's head, neck, face, elbow, and wrist when they slammed him against the wall of his cell. And finally, on September 17, 2008, Hamze was again placed in a holding cell with another inmate who beat him and accused him of committing a "heinous crime against black people." *Id.* at 6. In addition, moments before this beating, the inmate indicated that he recognized Hamze from "media exposure," mentioned the "Sheriff," and then referenced Jenne's 2007 statement. *Id.* (internal quotation marks omitted). Specifically, the inmate said Hamze was "guilty of . . . a 'brutal, senseless killing.'" *Id.*

On June 12, 2009, Hamze filed in the district court his first *pro se* complaint against several Main Jail staff members arising out of the incidents on January 9 and 10 and September 17, 2008. *Hamze v. Steele, et al.*, No. 0:09-cv-60882-AJ

3

(S.D. Fla. June 12, 2009) (*Hamze I*).  The magistrate judge construed his complaint as alleging violations of Hamze's constitutional due process rights under 42 U.S.C. § 1983.  Report of Magistrate Judge, *Hamze I*, No. 0:09-cv-60882-AJ, slip op. at 2-9 (S.D. Fla. Nov. 10, 2009).  The defendants moved for summary judgment, asserting a failure to exhaust administrative remedies.  *See* Order, *Hamze I*, No. 0:09-cv-60882-AJ (S.D. Fla. Jan. 5, 2012).  Upon the report and recommendation of the magistrate judge, the district court granted the motion and dismissed the complaint without prejudice for failure to exhaust administrative remedies.  *Id.* We affirmed.  *Hamze v. Steele, et al.*, 509 F. App'x 897 (11th Cir. 2013) (unpublished).

After *Hamze I* was dismissed, Hamze requested from Main Jail staff leave to file an out of time grievance, explaining that his first attempts to grieve these incidents were thwarted when Main Jail deputies intercepted his grievance forms and threatened to retaliate if he continued to file grievances.  Hamze did not allege whether his request was granted or denied.

On July 4, 2012, Hamze filed this *pro se* action in district court, again alleging that his constitutional rights were violated based on the incidents on January 9 and 10 and September 17, 2008.  Hamze added two additional claims, one based on the August 17, 2007 beating and another against former Sheriff Jenne sounding in defamation based on the statement Jenne made to the media when

4

Hamze was arrested. The magistrate judge construed this complaint as raising

claims under § 1983.[3] The defendants moved to dismiss, arguing that Hamze's

claims were barred either by the statute of limitations or because he failed to

exhaust administrative remedies, the latter issue having been decided adverse to

him in *Hamze I*. The magistrate judge recommended granting the motion, and the

district court adopted the recommendation over Hamze's objections. This appeal

followed.

## II. DISCUSSION

**A.    Collateral Estoppel**

Hamze first challenges the district court's determination that collateral

estoppel bars his claims arising out of the incidents on January 9 and 10 and

September 17, 2008.[4] We review *de novo* a district court's determination that

collateral estoppel bars a claim. *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280,

1285 (11th Cir. 2004). We review for clear error the court's factual finding that an

---

[3] Upon a frivolity review pursuant to 28 U.S.C. § 1915, the magistrate judge recommended that the defamation claim against Jenne proceed. Although the district court adopted the magistrate judge's recommendation, it apparently did not allow the defamation claim to proceed, and thus Jenne was never served. We therefore review the dismissal of the claim against Jenne as one under § 1915, but we apply the same standard that applies to our review of the dismissal of Hamze's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Farese v. Scherer*, 342 F.3d 1223, 1230 (11th Cir. 2003).

[4] Hamze also argues that the district court erred in determining that he was a "three-struck" filer, for purposes of the Prison Litigation Reform Act and thus ineligible to proceed *in forma pauperis* ("IFP") on appeal. Because he has since paid his appellate filing fees, the issue of his eligibility to proceed IFP is moot.

5

issue was actually litigated.  *Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1502 (11th Cir. 1984).

Collateral estoppel, also known as issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984); *accord Matter of McWhorter*, 887 F.2d 1564, 1567 (11th Cir. 1989) ("Collateral estoppel is appropriate only when the identical issue has been fully litigated in a prior case." (internal quotation marks omitted)).  The party seeking to bar an issue on collateral estoppel grounds must show that:  (1) the issue in the current and prior actions is identical; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the party against whom the doctrine is invoked had a full and fair opportunity to litigate the issue in the prior proceeding.  *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1317 (11th Cir. 2003).  "Collateral estoppel . . . is not limited to parties and their privies.  A defendant who was not a party to the original action may invoke collateral estoppel against the plaintiff."  *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1473 (11th Cir. 1986).  An issue has been "actually litigated" when it was properly raised by the pleadings or otherwise, submitted to the court for determination, and actually determined.  *See Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000).

6

The district court did not err in applying the doctrine of collateral estoppel and dismissing Hamze's claims arising out of the incidents on January 9 and 10 and September 17, 2008. The district court found that the issue of exhaustion regarding these incidents was raised in *Hamze I*, actually litigated, and identical to the exhaustion issue raised here. The district court's finding of fact that the same issue was actually litigated was not clearly erroneous. In both cases, Hamze complained of the same incidents and responded to dispositive motions on the same exhaustion grounds. Hamze also had a full and fair chance to litigate the issue in *Hamze I*. The defendants raised exhaustion as an affirmative defense in the answer to the initial complaint and again in their motion for summary judgment. Hamze had ample opportunity to amass evidence and argue on summary judgment why his claims should survive the defendants' exhaustion defense. Finally, because the district court dismissed *Hamze I* solely for failure to exhaust administrative remedies, the exhaustion issue was necessary to the court's judgment. Therefore, the district court did not err in applying collateral estoppel to conclude that Hamze failed to exhaust his administrative remedies as to these claims.

Hamze's arguments on appeal explaining why he failed to exhaust his administrative remedies do not alter our conclusion. Hamze asserts that (1) he was not told of the grievance procedure and was unaware of the requirements; (2) he

7

was incapable of filing a timely grievance when he was in the hospital; (3) Main Jail staff intercepted his grievances and destroyed them; and (4) Main Jail staff threatened to retaliate if he filed a grievance.  According to Hamze, he was unable to raise these arguments sufficiently in *Hamze I* because he lacked counsel and access to the prison law library.  Although his assertions about Main Jail's grievance procedures are troubling, he needed to raise them before the district court; thus we will not consider them on appeal.  Further, he does not meaningfully contest that the *issue* of exhaustion was previously litigated and actually decided. A collateral estoppel determination focuses on identity of issues, not arguments. *See Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 762-63 (8th Cir. 2003) (collecting cases).  "[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).  Thus, Hamze's additional arguments about the grievance process do not factor into our analysis.

Hamze also contends that his request to file a belated grievance form after *Hamze I* was dismissed constitutes a new fact rendering collateral estoppel inapplicable here.  It is generally true that "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues." *Montana v. United States*, 440 U.S. 147, 159, 162 (1979).  But Hamze

8

does not explain how his request to file a belated grievance amounts to an exhaustion of his administrative remedies. We have held that a prisoner who failed to file a timely grievance does not exhaust administrative remedies when his request to file an untimely grievance is denied. *Johnson v. Meadows*, 418 F.3d 1152, 1156-59 (11th Cir. 2005). Here, Hamze failed to allege whether his request was granted or denied; he now asserts in his appellate brief that the defendants never responded to his request. Regardless of whether the defendants expressly denied his request or simply failed to grant it, the result is the same: Hamze has failed to show that he exhausted his administrative remedies. *See id.* at 1159. For these reasons, the district court did not err in its dismissal of these claims as unexhausted.

## B.    Statute of Limitations

Hamze also challenges the dismissal on statute of limitations grounds of his two remaining claims, one based on the deputies' failure to protect him from another inmate on August 17, 2007 and the other based on Jenne's statements to the media in June 2007. We review *de novo* the district court's interpretation and application of the applicable statute of limitations. *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006). We apply the forum state's statute of limitations for personal injury actions to § 1983 claims. *See Chappell v. Rich*, 340 F.3d 1279, 1282-83 (11th Cir. 2003). For § 1983 claims such as

9

Hamze's brought in the forum state of Florida, the statute of limitations is four years. *See id.*; Fla. Stat. § 95.11(3)(*o*).[5] The limitations period begins to run when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996). Thus, a plaintiff must know or have reason to know that he was injured and who inflicted the injury. *Id.* at 562.

As regards his failure-to-protect claim, Hamze asserts that the statute of limitations began to run not when he was injured on August 17, 2007, but instead when he was beaten again on September 17, 2008, which was less than four years before he filed this lawsuit in July of 2012. He would not have suffered this later injury, he argues, had deputies "properly reported the altercations . . . in 2007." Appellant's Br. at 20. Hamze essentially attempts to bootstrap his way out of the statute of limitations bar by tying the alleged misconduct in 2007 to injury sustained a year later. We see insufficient factual support in his complaint to render this theory of liability plausible. And in any event, we have already held that his claim arising out of his mistreatment on September 17, 2008 was barred as unexhausted. Hamze therefore identifies no error in the district court's dismissal of this claim.

---

[5] We assume without deciding that Hamze's § 1983 claim premised on Jenne's allegedly defamatory statement is subject to a four-year statute of limitations rather than the two-year limitations period for slander under Fla. Stat. § 95.11(4)(g).

In contrast, we disagree with the district court's ruling that Hamze's defamation claim against Jenne under § 1983 is time-barred. The court concluded that Hamze's defamation allegations arose out of incidents occurring on August 17, 2007, but, as alleged in the complaint, Jenne's comments led to Hamze's injury on September 17, 2008. Assuming the truth of allegations in the complaint that the beating in September 2008 was causally related to Jenne's June 2007 statements, Hamze's injuries fell inside the four year statute of limitations. Nonetheless, as we explain next, we affirm the dismissal of this claim under Federal Rule of Civil Procedure 12(b)(6). *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("We may affirm the district court's judgment on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.").

## C.    The § 1983 Defamation Claim

To state a claim under § 1983 based on statements by government officials, a plaintiff must first allege a common-law defamation claim and then allege a constitutional injury flowing from the defamatory statement. *Rehberg v. Paulk*, 611 F.3d 828, 851-52 (11th Cir. 2010). A statement of opinion bearing no provably false connotation cannot support a common-law defamation claim. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15 (11th Cir. 1985) (applying Florida law).

11

Likewise, "[a] statement that is substantially true is not defamatory." *Brueggemeyer v. Associated Press*, 609 F.2d 825, 826 (5th Cir. 1980);[6] *accord Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1107-1108 (Fla. 2008) (recognizing that although a literally true statement could create a false impression and thus be actionable, as a long as the statement is "substantially true," it cannot support a claim for defamation).

Jenne's June 2007 statements to the media are not actionable because they were either statements of opinion or true statements. Jenne's expression of his opinion that Hamze's crime was "a brutal, senseless, roadrage killing" that showed a "disregard for human life," Compl. at 4, cannot support a claim for defamation. And, as alleged in the complaint, Jenne's statement that he intended to charge Hamze with first degree murder was substantially true. According to the complaint, Jenne endeavored to charge Hamze with first degree murder, but the grand jury downgraded the charge. Thus, even assuming Hamze has adequately alleged a causal connection between Jenne's 2007 statements and Hamze's September 2008 beating, the remarks at issue were not defamatory as a matter of law.

**AFFIRMED.**

---

[6] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

12